WARD LAW, Circuit Judge,
dissenting:
I dissent from the majority’s denial of attorney’s fees to the prevailing party in this social security disability benefits case. The Equal Access to Justice Act (EAJA) instructs that we “shall” grant attorney’s fees to a prevailing plaintiff “unless” the government meets its burden to demonstrate that both its litigation position and the agency decision on review were “substantially justified.” 28 U.S.C. § 2412(d)(1)(a); Thangaraja v. Gonzales, 428 F.3d 870 (9th Cir.2005). As the Supreme Court has explained, “Congress enacted EAJA in 1980‘to eliminate the barriers that prohibit ... individuals from securing vindication of their rights in civil actions and administrative proceedings brought by or against the- Federal Government.’ ” Scarborough v. Principi, 541 U.S. 401, 406, 124 S.Ct. 1856, 158 L.Ed.2d 674 (2004) (quoting H.R.Rep. No. 96-1005, p. 9) (citation omitted); see also Congressional Findings and Purposes, 94 Stat. 2325, note following 5 U.S.C. § 504 (“It is the purpose of this title ... to diminish the deterrent effect of seeking review of, or defending against, governmental action ....”) (discussing earlier iteration of the EAJA).
Here, we held that the Administrative Law Judge’s (ALJ) conclusion that Campbell had failed to demonstrate that she was disabled as of June 30, 1996, the last date she was insured, failed to survive the extremely deferential “substantial evidence” standard of review. That the agency’s decision was not supported by substantial evidence is a “strong indication” that the government’s position was not “substantially justified” for purposes of the EAJA. Thangaraja, 428 F.3d at 874. As we explained in Thangaraja, it “will be only a decidedly unusual case in which there is substantial justification under the EAJA even though the agency’s decision was reversed as lacking in reasonable, substantial and probative evidence in the record.” Id. (internal quotation and citation omitted); cf. Al-Harbi v. INS, 284 F.3d 1080, 1085 (9th Cir.2002) (denying attorney’s fees under the EAJA in agency action because we upheld “the government’s central positions,” even though we reversed the agency decision on review).
This is not such an unusual case. In the circumstances here, where Campbell un-disputedly had multiple sclerosis, which was undisputedly capable of producing the *870 symptoms she reported, the law required the ALJ to credit Campbell’s testimony about those symptoms unless there was some evidence of “malingering” or clear and convincing evidence contradicting her statements. Smolen v. Chater, 80 F.3d 1273, 1281 (9th. Cir.1996). This law was clearly established well before Campbell’s proceedings began, and it is straightforwardly applicable here. As even the state’s doctor agreed, there is no evidence that Campbell was a malingerer, and the ALJ did not so find. Accordingly, the ALJ should have credited Campbell’s testimony unless there was clear and convincing evidence to the contrary. As we unanimously concluded, there was none.
When the ALJ asked Campbell to describe her symptoms “between 1995 and 1996,” Campbell testified that in addition to her generally progressive symptoms, she experienced eight to ten “exacer-bations” per year, each lasting up to two weeks, during which her fatigue and weakness worsened. She testified that it was difficult to get out of bed; that at times, she had to crawl to reach the bathroom; that she was unable to walk without support and “scooted on her butt” to go down stairs; that she was unable to perform tasks like making her bed, vacuuming, sweeping, mopping, or even holding a pen; and that she stopped curling her hair because it required “too much energy.” The ALJ rejected not only this testimony, but also that of Campbell’s treating and examining physicians whose medical opinions supported Campbell’s testimony because a third non-treating doctor, the state’s witness, said that he was unsure when Campbell became fully disabled, despite his stated opinion that Campbell was likely fully disabled as of “sometime between '95 and '98,” a range which obviously includes, and does not exclude, the date of June 30,1996. In other words, not a single physician contradicted Campbell’s description of her disability as of her last date insured. When the ALJ presented a vocational specialist with a hypothetical incorporating just six periods of exacerbation, not the actual eight to ten periods Campbell experienced in 1995 and 1996, the specialist unequivocally stated that a person experiencing such symptoms would be unable to perform work in the national economy. The Commissioner was not “substantially justified” in failing to apply the clearly established law that compelled the result we reached in this case. 28 U.S.C. § 2412(d)(1)(A). Nor was the government justified in defending the agency’s erroneous decision through multiple stages of litigation at taxpayer expense.
That the ALJ’s decision was not substantially justified is further underscored by our recent opinion in Meier v. Colvin, 727 F.3d 867 (9th Cir.2013), where we held that a district court abused its discretion by denying attorney’s fees under the EAJA in remarkably analogous circumstances. There,- as here, the panel had previously issued an unpublished disposition reversing the district court’s decision affirming an ALJ’s denial of social security benefits. There, an ALJ improperly rejected a Social Security applicant’s testimony regarding his subjective pain symptoms without clear and convincing reasons. The main difference between the two appeals is that in Meier, the question was whether the applicant was presently disabled, whereas here, the question was whether Campbell was disabled on the last date insured. I disagree with my colleagues that this difference bears on whether the ALJ’s decision was substantially justified, where all the testimonial evidence, including that of the state’s doctor, whose testimony was credited by the ALJ, supported Campbell’s claim of disability as of the date last insured. Moreover, the government and Campbell en *871 tered into a Joint Stipulation in which the government agreed that Campbell was “affirmatively diagnosed with multiple sclerosis (‘MS’) in 1989” after experiencing symptoms for years prior, and that the lack of medical records between the years 1989 and 2000 was “due to her lack of medical insurance.” That Campbell did not have records for 1996, presumably because she could not afford to pay medical bills, does not substantially justify the government’s litigation position; indeed, it turns the safety net intended to be created by the provision of disability benefits on its head. When we ruled in Campbell’s favor, we concluded that there were no clear and convincing reasons not to credit Campbell’s testimony, so the ALJ should have credited it. See Smolen, 80 F.3d at 1281. We concluded that the ALJ acted improperly by rejecting Campbell’s testimony about the frequency and duration of her exacerbations. We found that had the ALJ properly credited Campbell’s testimony, he would have had to find that her MS rendered her disabled as of June 30, 1996.
Our precedent requires us to grant Campbell’s motion for attorney’s fees under these circumstances. Moreover, neither Campbell nor her attorney should be made to bear the burden of the ALJ’s egregious error, and the government’s zealous defense of it. Congress enacted the EAJA to prevent precisely such outcomes.